IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-00012-RN

**Rebecca Angela Yaun**,

        Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

        Defendant.

**MEMORANDUM & ORDER**

This matter is before the court on the parties' cross-Motions for Judgment on the Pleadings [D.E. 11, 17]. The time for filing any responses or replies has expired and the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(c), the parties have consented to jurisdiction by a United States Magistrate Judge for all proceedings, including final judgment. For the following reasons, it is ORDERED that Plaintiff's Motion for Judgment on the Pleadings [D.E. 11] is DENIED, that the Defendant's Motion for Judgment on the Pleadings [D.E. 17] is GRANTED and the Commissioner's final decision is AFFIRMED.

**I. BACKGROUND**

Plaintiff filed an application for supplemental security income on June 28, 2010, alleging a disability beginning on May 31, 2010. The claim was denied initially and upon reconsideration. A hearing was held on August 22, 2012 and, in a decision dated October 25, 2012, the ALJ denied Plaintiff's application. (Tr. at 12--20). The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; fibromyalgia; and asthma/allergies. (*Id*. at 14). The ALJ also found that her impairments, alone or in combination, did not meet or equal a

Listing impairment. (*Id.* at 15). The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations: must avoid exposure to airborne irritants (including dust, fumes, gases, and odors). (*Id.* at 16.) The ALJ determined that Plaintiff was capable of performing her past relevant work as a certified nursing assistant. (*Id.* at 18.) The ALJ also made alternative findings at step five and concluding that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing. (Id. at 19). These include: home attendant; child monitor/nanny; and laundry worker (*Id.*). Thus, the ALJ found that Plaintiff was not disabled. (*Id.*).

After unsuccessfully seeking review by the Appeals Council, Plaintiff commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on December 5, 2013. [D.E. 1].

## II. STANDARD OF REVIEW

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chafer*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the

claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his or her age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

**III. ANALYSIS**

*A. Mental health*

Plaintiff first contends that the ALJ erred in failing to find that her mental conditions constituted a severe impairment. Specifically, she argues that her history of bipolar disorder and her obsessive compulsive disorder caused vocational limitations, and that these should have been reflected in the RFC determination. In support of her argument, Plaintiff notes that medical records from RHA Health Services show that in July and August, 2012, she was treated by Dr. Graham, a psychiatrist, who prescribed Prozac.[1] Dr. Graham diagnosed her with OCD and histories of bipolar disorder and heroin abuse, and assessed her Global Assessment of

---

[1] Plaintiff testified at the hearing that she had recently started medication for OCD. The ALJ stated that the record contained no treatment for this condition. (Tr. at 15). Although the ALJ erred in making that statement, as the record did contain notation of her treatment of OCD with Prozac, the error in harmless.

3

Functioning ("GAF") (Tr. at 52.) Plaintiff also points out her testimony wherein she stated that, at times, she isolates and fails to engage in self-care. She further maintains that Dr. Graham's assessment was supported by the state agency reviewers found that her mental impairments were severe. A review of their reports, however, indicates that they opined that she was capable of performing simple, routine, repetitive tasks with limited social contact. (Tr. at 105, 128.) They also concluded her mental RFC required no limitations in understanding and memory or maintaining concentration, persistence and pace in (*Id*. at 110, 128.)

It is a plaintiff who bears the burden of providing medical evidence to the Commissioner that establishes the severity of her impairments. 20 C.F.R. § 416.912(a). *See Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). As noted by the Defendant, despite her argument that she suffers from a severe mental impairment, the record contains little evidence of such a condition during the relevant time period. The record shows a June 2010 statement by the Plaintiff to Dr. Cracker that she was under a great deal of stress and took Vicodin (tr. 365) and, in September 2010, Plaintiff told Dr. Silver, a state agency psychologist, that over the past five years, she was occasionally irritable and depressed, sometimes had racing thoughts and, at times, could be forgetful and cry easily. (Tr. 369). Plaintiff also reported to Dr. Tanta, a consultative examiner, that she was diagnosed with bipolar disorder by her mother, a registered nurse, although she denied ever being treated by a psychiatrist or having sought treatment for the condition. (Tr. 373). Two years later, in July, 2012 and August, 2012, Plaintiff had her initial and follow-up visits with Dr. Graham.(Tr. 407–13). She reported to Dr. Graham that she had never taken medication for mood stabilization and

4

that she experienced mania but denied mood swings. (Tr. 411). As noted above, Dr. Graham diagnosed OCD and history of bipolar disorder and heroin abuse, for which she was prescribed Prozac. (Tr. 412). Defendant observed that this is the first time in the medical record that OCD is mentioned, and Dr. Graham's examinations came just four months before the ALJ's decision. [D.E. 18, p. 12] Thus, at the time of the hearing, Plaintiff had not shown these conditions satisfied the 12 month durational requirement. *See* 20 C.F.R. §404.1509 (impairment must have lasted or must be expected to last for a continuous period of at least 12 months).

Additionally, there was little in the way of mental health treatment records for the ALJ to conclude that Plaintiff's mental limitations were severe impairments. What mental health records did exist during the relevant time period noted, for the most part, normal exam findings. (Tr. 370–71; 407; 410). While she complained to Dr. Silver of depression in August, 2010, his notes observe that she did not appear depressed, she had no delusions, paranoia or hallucinations, and that she had good memory and logical thought processes. (Tr. 370). Dr. Silver's September, 2010 exam was essentially normal, and noted that Plaintiff denied a history of mental health treatment. (Tr. 369). As noted above, Dr. Graham's July, 2012 metal status exam was largely normal, noting that she denied any mood swings and that her memory, judgment and affect were all normal or average, despite the fact that she had not taken her medication in a few months. (Tr. 410). His follow-up exam a month later was also essentially normal. (Tr. 407).

Additionally, the other evidence of record supports the ALJ's finding that her mental conditions were not severe impairments. Plaintiff had not been hospitalized for mental health reasons nor took mood stabilizers. In fact, she had only begun medication four months before the ALJ's decision was issued. (Tr. 412). Plaintiff has not submitted any subsequent reports from Dr. Graham as to the effectiveness of her medication. Additionally, despite her mental health

conditions, Plaintiff was able to complete her CNA education, with a 3.5 grade point average, and certification, and was able to work full-time for at least one year. (Tr. 29; 246; 255; 258–59) She also stated that she reduced her hours because of physical problems with her feet and left knee, not because of mental health reasons. (Tr. 264). Finally, Plaintiff testified that she has no trouble getting along with others, and her activities of daily living, which include driving, attending church and attending school, suggest that her mental health issues are not as limiting as she avers. (Tr. 41–42).

In sum, the limited treatment record, generally normal mental heath examinations and her ability to attend school and work as a certified nursing assistant, despite her mental health conditions, support a finding that these conditions were not severe impairments. Accordingly, as there is substantial evidence to support the ALJ's finding that her mental health conditions did not constitute severe impairments, Plaintiff's argument on this issue is without merit.

### B. *Vocational expert testimony*

Plaintiff also contends that the ALJ erred in failing to accept the testimony of the Vocational Expert ("VE") in response to one of the hypothetical questions posed. She contends that by finding she had no severe mental impairments, the ALJ ignored evidence that she was undergoing psychiatric treatment.

When asked about a hypothetical claimant who would be off-task more than one-third of the time and unable to maintain concentration persistence and pace for more than two hours, the VE responded that there would be no jobs suitable to a person with such limitations. (Tr. 58–59). The VE also testified that there would be no jobs for available for a person who would be absent from work two to three times per month. (Tr. 59). These hypothetical questions, however, did not reflect Plaintiff's mental and physical impairments, as found by the ALJ. The relevant

hypothetical questions need only include in his questioning those impairments which the ALJ has found to be credible. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ); *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record"). As the hypothetical questions referenced by Plaintiff did not adequately reflect the impairments found by the ALJ, the responses to those questions are not substantial evidence of her ability, or lack thereof, to engage in other work. *See McPherson v. Astrue*, 605 F. Supp. 2d 744, 761 (S.D.W. Va. 2009) ("The ALJ is under no duty to present the VE with hypothetical questions that include [claimant's] claimed impairments if the ALJ has found those impairments to be not severe or not credible.").

Plaintiff also contends that the ALJ erred in failing to address whether she could perform the mental demands of her past work, as required by SSR 82-62. Under SSR 82-62, "[d]etailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate" when making the RFC determination. SSR 82–62, at *3 (emphasis added). An ALJ is not required to specifically address each of these job-related abilities in the decision, so long as there is appropriate evidence in the record about such abilities. *Jividen v. Colvin*, No., 2014 WL 1333196, at *8 (S.D.W. Va. Mar. 31, 2014). In order to find that the claimant can perform past relevant work, the ALJ must make findings of fact about the claimant's RFC, about the physical and mental demands of the claimant's past job, and about whether the claimant's RFC allows him to return to that job. SSR 82–62, at *4.

7

In this case, the ALJ had sufficient detailed information about all facets of Plaintiff's past work when making his determination. The ALJ elicited testimony from the Plaintiff about her work, her job duties and how she performed them. (Tr. 45–46; 55). The ALJ also sought testimony from the VE about Plaintiff's past work as a certified nursing assistant. (Tr. 55) The VE testified that her past work as a was semi-skilled. (*Id*.) Moreover, in finding that Grid Rule 203.29 would to direct a finding of "not disabled" if she had solely non-exertional impairments, the ALJ implicitly determined that her past work was skilled or semi-skilled, but that she had no transferable skills. In finding, at step four, that Plaintiff could perform her past relevant work, and there being no severe mental impairment which caused limitations in her RFC, Plaintiff's argument that the ALJ failed to follow the directives of SSR 82-62 is unpersuasive given that her past work is not inconsistent with the RFC determination. Accordingly, Plaintiff's argument on this issue lacks merit.

Plaintiff further contends that the ALJ failed to identify her transferable skills at step five, as required by SSR 83-10. Plaintiff argues that a finding that her past relevant work was performed above the unskilled level, *to wit.*, skilled or semi-skilled work, and that SSR 83-10 requires transferrable skills to be identified. She asserts the ALJ failed to identify her transferrable skills.[2]

It appears that Plaintiff takes issue with a finding that she had no transferable skills but then accepting the VE's testimony proposing semi-skilled positions. However, transferability of skills simply addresses whether a claimant's past relevant work gives him particular skills that

---

[2] SSR 83-10 provides that past relevant work that is "skilled or semiskilled—skills transferable" requires that a person must have performed work which is above the unskilled level of complexity, must have identifiable skills, and must be able to use these skills in specific skilled or semiskilled occupations within his or her RFC. As noted above, Plaintiff's past work was categorized as "skilled or semiskilled—skills not transferable." As the skills of her past work were not transferable, it begs the question why the ALJ would be required to identify her skills for ascertaining other jobs at step five.

will assist them in a new position. S*ee Costley v. Commissioner of Social Sec.*, No. SAG-21-2670, 2013 WL 4836102, at * 1 (D. Md. Sept. 9, 2013); *Dameron v. Colvin*, No.1:09-CV-425, 2013 WL 1909870, at *4 (M.D.N.C. May 8, 2013) (ALJ is not required to describe how past work skills transfer to the representative occupations named by the vocational expert, nor must the expert or the ALJ parse out which skills plaintiff gleaned from each of his previous jobs) (citing *Harris v. Astrue*, 646 F. Supp. 2d 979, 997–998 (N.D. Ill. 2009)). Moreover, any error by the ALJ in failing to identify transferable skills would be harmless inasmuch as he concluded, at step four, that she could perform her past work. Consequently, her argument that the Commissioner erred at steps four or five is without merit.

**IV. CONCLUSION**

For the aforementioned reasons, the Plaintiff's Motion for Judgment on the Pleadings [D.E. 11] is DENIED, that Defendant's Motion for Judgment on the Pleadings [D.E. 17] is GRANTED, and that the decision of the Commissioner is AFFIRMED.

Dated: March 16, 2015.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE